FILED

J.N

OCT - 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARGARET JOHNSON,                              )
                                         )
            **Plaintiff,**             )   07CV5652
                                           )   JUDGE KOCORAS
     v.                             )   MAG. JUDGE VALDEZ

THE BOARD OF TRUSTEES                          )
ILLINOIS COMMUNITY COLLEGE                     )   **Jury Trial Demanded**
DISTRICT NO. 508, d/b/a CITY                   )
COLLEGES OF CHICAGO and                        )
HAROLD WASHINGTON COLLEGE                       )
                                         )
            **Defendant.**           )

## COMPLAINT

NOW COMES Plaintiff, MARGARET JOHNSON, by and through her attorneys, and complains of THE BOARD OF TRUSTEES ILLINOIS COMMUNITY COLLEGE DISTRICT NO. 508 d/b/a CITY COLLEGES OF CHICAGO and HAROLD WASHINGTON COLLEGE as follows.

## JURISDICTION

1.    Jurisdiction is based upon 28 U.S.C. §1331, 28 U.S.C. §1343, and 29 U.S.C. §2601 et seq.

## VENUE

2.    This action properly lies in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this claim occurred in this judicial district.

## PARTIES

3.    Plaintiff, MARGARET JOHNSON, (hereinafter "Johnson" or "Plaintiff") is a female citizen of the State of Illinois who has been employed by Defendant, THE BOARD OF

TRUSTEES ILLINOIS COMMUNITY COLLEGE DISTRICT NO. 508 d/b/a CITY
COLLEGES OF CHICAGO and HAROLD WASHINGTON COLLEGE, from 1997 to present.

4.      At all times relevant hereto, Plaintiff was an "employee" under the Family and
Medical Leave Act ("FMLA"). In the calendar year prior to her exercise of FMLA rights,
Plaintiff worked at least 1250 hours and at all times relevant hereto, she suffered a "serious
health condition" as defined the FMLA.

5.      Defendant THE BOARD OF TRUSTEES ILLINOIS COMMUNITY COLLEGE
DISTRICT NO. 508 d/b/a CITY COLLEGES OF CHICAGO and HAROLD WASHINGTON
COLLEGE, (hereinafter "College" or "Defendant") is a corporation organized under the Illinois
Community College Act, operating seven accredited colleges throughout the City of Chicago,
including Harold Washington College, located at 30 East Lake Street, Chicago, Illinois 60601.

6.      At all times relevant hereto, Defendant employed more than fifty (50) employees
and was engaged in an industry affecting commerce, thereby rendering Defendant an employer
under the Family and Medical Leave Act.

### FACTUAL ALLEGATIONS

7.      Plaintiff, Margaret Johnson, began her employment with Defendant in or around
fall of 1997 as a part-time instructor at Daley College.

8.      Throughout her employment, Plaintiff has discharged all of her duties
competently with an excellent work ethic and performance.

9.      Plaintiff was rewarded for her excellent work performance when she was awarded
a full-time instructor position and later granted tenure in or around spring of 2001.

10.     At all times relevant hereto, Plaintiff suffered from fibromyalgia and Reflex
Sympathetic Dystrophy ("RSD"), which are chronic and serious health conditions that are non-
curable, and which substantially limit one or more of Plaintiff's major life activities.

11.     Plaintiff's serious health conditions are exacerbated by physical and mental stressors, particularly when acutely symptomatic.

12.     At all times relevant hereto, Defendant has been aware of Plaintiff's serious health conditions and their chronic and disabling natures, has been aware of Plaintiff's record of these conditions, and in fact, has regarded Plaintiff as a disabled individual.

13.     In 2005, Plaintiff was transferred from Daley College to Harold Washington College; however, when she first reported to work at Harold Washington College at the start of the fall semester in August 2005, she was not permitted on the premises and was instead sent home.

14.     Defendant informed Plaintiff that Harold Washington College had not yet agreed to employ her and that she was required to submit information regarding her health conditions before she would be permitted to begin working for Harold Washington College.

15.     Notwithstanding that the Board of Trustees had already reviewed Plaintiff's medical information and approved Plaintiff to work at Harold Washington College, Plaintiff nevertheless provided Defendant with additional information regarding her health conditions and began teaching at Harold Washington College in or around fall of 2005.

16.     Harold Washington College administration continued to treat Plaintiff disparately on the basis of her disabilities throughout her employment, and that disparate treatment escalated dramatically during the spring semester of 2007 when Plaintiff's conditions became more acutely symptomatic and she required time off work for treatment.

17.     In the spring semester of 2007, Plaintiff was required to take several sick days for continuing treatment of her conditions and related complications from her treatment of those conditions.

18.     Notwithstanding Defendant's awareness of her serious health conditions and their disabling natures, Defendant took adverse action against Plaintiff for her absences.

19.     Rather than offer Plaintiff medical leave pursuant to the Family and Medical Leave Act, or even discuss with her the right to such a leave as required by law, Defendant instead issued Plaintiff an Oral Warning and Directive in February 2007 chastising her for having been absent due to her serious health conditions.

20.     Plaintiff's conditions continued to deteriorate as the semester progressed, and in March 2007, Plaintiff requested to take FMLA leave. Defendant responded to Plaintiff's leave request by immediately escalating its disparate and discriminatory treatment of Plaintiff and openly interfering with her exercise of FMLA rights.

21.     For example, Defendant interfered with Plaintiff's rights and retaliated against her by refusing to communicate in any manner with Plaintiff's husband relating to her disabilities and FMLA leave request while Plaintiff remained incapacitated.

22.     Defendant instead further harassed Plaintiff by bizarrely referring to Plaintiff's husband, Mr. Martin Johnson whom several of her colleagues had met, in memorandums issued to Plaintiff repeatedly as Plaintiff's "claimed husband" and the "individual claiming to be [her] husband" and issuing a mandate refusing any contact with Plaintiff's husband for any reason, despite knowing that Plaintiff's conditions were acutely symptomatic and disabling such that her husband's assistance was necessary to facilitate her exercise of FMLA-protected leave and her compliance with the Defendant's directives while on leave.

23.     Defendant then continued to make unreasonable and unlawful demands on Plaintiff during her medical leave, called into question the nature and extent of her health

4

conditions, and demanded that she conduct work from home at a time when she was incapacitated and on a medical leave of absence.

24. When Defendant provided Plaintiff the FMLA leave request form, Defendant ordered that the form be returned within 24 hours, at the same time that Defendant issued further mandates for Plaintiff to keep performing her job during her medical leave of absence.

25. Plaintiff complied with Defendant's request to return the form immediately; Plaintiff then requested, through counsel, that Defendant accommodate her so that she could comply with its unlawful mandate to continue to supply course materials from home while she was on her medical leave of absence.

26. Plaintiff continually attempted to comply with the College's unlawful "directives" that she conduct work from home while on leave.

27. Even though most of her course materials were accessible by the College, and Plaintiff advised the College of the same, Plaintiff nevertheless attempted to provide the College with additional course materials for the substitutes teaching her courses during her medical leave, but again needed her husband's assistance in doing so, as she remained incapacitated.

28. Defendant again refused to have any contact with Plaintiff's husband and refused Plaintiff's offer to have her husband facilitate delivery of the materials.

29. In fact, upon receipt of correspondence from Plaintiff's counsel offering this facilitation, Defendant's attorney openly questioned whether Plaintiff was acutely sick at all, stating in response to the statement that Plaintiff was very ill, that "she claims to be very sick" and upon further inquiry as to whether he was questioning that she was sick, stated "yeah, I question that she's sick." When asked to expound upon why he, as Defendant's attorney,

questioned Plaintiff's ongoing health conditions, Defendant's attorney declined, stating "I don't have to get into that with you."

30.     During this time, Plaintiff made it explicitly clear to Defendant that she felt her FMLA rights had been interfered with, that she felt discriminated against and harassed on the basis of her disabilities and her exercise of her rights, and she explicitly requested that the discrimination cease.

31.     Rather than cease its discriminatory conduct, Defendant further discriminated and retaliated against Plaintiff when it refused to allow her to return to her classroom upon the expiration of her FMLA leave on or about May 1, 2007.

32.     Plaintiff was entitled to return to the classroom upon returning from her leave.

33.     Instead of allowing her to return, Defendant took the extraordinary and unprecedented step of asking the students in only certain of Plaintiff's classes to submit letters to the Dean expressing whether they wished for Plaintiff to return or whether they wished for the substitute to remain through the end of the semester implying, significantly, that if Plaintiff were to return, none of the students' work under the substitute professor would count, giving the students the impression that they would have to revert back to Plaintiff's syllabus and do extra work just before finals, thereby providing them with irrefutable incentive to oppose Plaintiff's return to the classroom.

34.     Plaintiff was not allowed to return to her instruction and the semester ended May 12, 2007.  Plaintiff was not scheduled to teach in the summer of 2007.

35.     At the earliest possible opportunity, Defendant's discriminatory and retaliatory conduct toward Plaintiff resumed just prior to the start of the fall semester of 2007, when

Defendant attempted to prevent Plaintiff from returning to her teaching position by bringing false charges against her just days prior to when she was to report to the fall semester term.

36.     Specifically, Defendant ordered Plaintiff to submit to a Chancellor's level pre-disciplinary hearing ("the hearing") based upon the meritless and suspect letters that Defendant had solicited from students several months earlier regarding Plaintiff while she was on FMLA leave.

37.     The pretextual nature of the hearing was evidenced in Defendant's failure to raise these concerns in a timely fashion with Plaintiff when she returned to work in May 2007 and any issues could have been addressed then. The letters were used only as a basis to attempt to prevent Plaintiff from returning the classroom and were plainly never meant to be a tool of instruction.

38.     The pretextual nature of the hearing was further evident in Defendant's failure to properly notify Plaintiff of all the charges against her, informing her only as she arrived at the hearing of a new charge against her arising from her absences due to her serious health conditions and FMLA leave.

39.     Plaintiff was also denied the opportunity to have a full and fair transcribed hearing with witness testimony on her behalf.

40.     Furthermore, Plaintiff submitted several hundred pages of documents negating the false charges, including: several years of student evaluations illustrating Plaintiff's historically excellent work performance; a student letter relating the manipulative manner in which the other student letters were obtained; a student letter from a course where the student signed a petition to have Plaintiff return to the classroom; as well as other documentation of Plaintiff's excellent work history.

41.     Under the pretext of these meritless charges and without regard for the best interest of its students, Defendant disciplined Plaintiff with a one week unpaid suspension to be served during the first week of classes of the fall semester term, again refusing to permit Plaintiff to return to her position upon the expiration of her FMLA leave.

42.     When Plaintiff was finally permitted to return to teaching her courses the second week of classes, Defendant continued to endlessly harass Plaintiff and subject her to extraordinarily disparate terms and conditions of her employment on the basis of her disabilities, exercise of FMLA rights, and complaints of the on-going discrimination, harassment and retaliation.

43.     For example, in the short time since Plaintiff has returned to work, Defendant has, again without precedent and largely in violation of union regulations, taken repeated extreme and outrageous actions against Plaintiff, including but not limited to the following:

        a.  Defendant placed a Dean or other College Administrator in each of Plaintiff's courses for observation, severely disrupting her classroom and undermining her ability to teach the students;

        b.  Defendant's Vice-President who presided over the discriminatory and retaliatory pre-disciplinary hearing even sat in on Plaintiff's classes, again undermining Plaintiff's effectiveness as a professor;

        c.  Defendant posted security guards in the vicinity of Plaintiff's classrooms while she was teaching;

        d.  Defendant requested that Plaintiff submit and obtain prior approval for daily lesson plans for her courses; and

        e.  Defendant threatened Plaintiff with discipline if she were to take any time off during the semester and followed through with that threat when Plaintiff took one sick day to which she was entitled.

44.     Defendant's disparate treatment of Plaintiff is truly unparalleled and stands in stark contrast to its treatment of other faculty members who do not suffer from disabilities and require FMLA leaves of absence, or complain of violations of the federal laws that protect individuals with disabilities and serious health conditions.

45.     Defendant's continued harassment and discipline of Plaintiff has been a clear pretext for further discrimination and retaliation on the basis of Plaintiff's disabilities and serious health conditions, her exercise of rights pursuant to the FMLA, and her complaints of discrimination and disparate treatment.

46.     Defendant's treatment of Plaintiff has created a hostile work environment so severe and pervasive that no reasonable person could be expected to endure it.

47.     Defendant's conduct is extreme and outrageous, was intended to cause Plaintiff severe emotional distress, was pursued notwithstanding Defendant's knowledge of Plaintiff's susceptibility to severe emotional distress, and did cause Plaintiff severe emotional distress.

48.     As a result of Defendant's conduct Plaintiff has lost wages and other benefits, has suffered embarrassment and humiliation and her career has been damaged. Plaintiff has also suffered severe emotional distress, deterioration of her medical conditions, increased pain, a loss of enjoyment of life, inconvenience and non-pecuniary losses as a direct result of Defendant's conduct.

## COUNT I - INTERFERENCE WITH RIGHTS
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

49.     Plaintiff re-alleges paragraphs 1 through 48 and incorporates them as though fully set forth in Count I of this Complaint.

50.     The Family Medical Leave Act, specifically 29 U.S.C. § 2615, makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."

51.     As set forth above, Plaintiff was an employee eligible for certain rights under the FMLA, including the right to exercise leave for treatment of her serious health conditions.

52.     By its conduct as alleged herein, Defendant violated the Family Medical Leave Act, in that Defendant attempted to and in fact did interfere with, restrain, and/or deny Plaintiff's FMLA rights.

53.     Defendant's conduct toward Plaintiff illustrated, and continues to illustrate, a willful and/or reckless disregard of Plaintiff's rights under the Family Medical Leave Act.

54.     Plaintiff demands to exercise her right to a jury trial of this matter.

## COUNT II –DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

55.     Plaintiff re-alleges paragraphs 1 through 48 and incorporates them as though fully set forth in Count II of this Complaint.

56.     The Family Medical Leave Act, specifically 29 U.S.C. § 2615, prohibits discrimination and makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA."

57.     As set forth above, Plaintiff engaged in protected activity under the FMLA including her exercise of leave, her repeated assertion of the right to be free from interference with her exercise of FMLA-protected leave, her complaints of discrimination and harassment, and her requests that Defendant cease engaging in discriminatory and harassing conduct intended to deny her exercise of FMLA rights.

58.     By its conduct as alleged herein, Defendant violated the Family Medical Leave Act, in that Defendant attempted to and in fact did discriminate and retaliate against Plaintiff for the exercise of her rights and/or for her opposing to Defendant's unlawful practices.

59.     Defendant's conduct toward Plaintiff illustrated, and continues to illustrate, a willful and/or reckless disregard of Plaintiff's rights under the Family Medical Leave Act.

60.     Plaintiff demands to exercise her right to a jury trial of this matter.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.     Plaintiff re-alleges paragraphs 1 through 48 and incorporates them though fully set forth in Count III of this Complaint.

62.     Defendant was aware of Plaintiff's susceptibility to emotional distress throughout her employment in that Plaintiff's medical conditions render her particularly vulnerable to stressors and further harassing conduct and disparate treatment would severely compromise Plaintiff's health and devastate her emotional and physical well-being.

63.     By the acts and conduct described above, Defendant intended to cause and did cause Plaintiff severe emotional distress, and/or acted with knowledge of the high probability that its actions would cause Plaintiff such injury and with reckless disregard for such.

64.     Defendant's conduct was indeed so extreme and outrageous that it was well beyond all possible bounds of decency.

65.     Plaintiff suffered severe emotional distress as a direct and proximate result of Defendant's conduct.

66.     Defendant's conduct toward Plaintiff illustrated, and continues to illustrate, a willful and/or reckless disregard of Plaintiff's rights under Illinois law.

67.     Plaintiff demands to exercise her right to a jury trial of this matter.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant as follows:

a.      Declare that Defendant's conduct is in violation of the Family Medical Leave Act;

b.      Declare that Defendant's conduct violates Illinois law;

c.      Award Plaintiff the value of all compensation lost and benefits lost as a result of Defendant's unlawful conduct;

d.      Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

e.      Award Plaintiff damages for emotional distress;

f.      Award Plaintiff compensatory damages;

g.      Award Plaintiff liquidated damages;

h.      Award Plaintiff punitive damages;

i.      Award Plaintiff reasonable attorney's fees, costs and disbursements; and

j.      Award Plaintiff any and all other relief as is appropriate and just.

Respectfully submitted,
MARGARET JOHNSON

By:     Attorney for Plaintiff

M. Megan O'Malley
John P. Madden
Ylda Marisol Kopka
O'Malley & Madden, P.C.
542 South Dearborn
Suite 660
Chicago, Illinois 60605
(312) 697-1382